FILED
2011 Mar-30  PM 03:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| **PAMELA G. HAMM,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case. No.: 3:10-CV-00272-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

## I.      Introduction

Plaintiff, Pamela G. Hamm, applied for supplemental security income payments under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 *et seq*.  Her application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied the claim.  The Appeals Council rejected a subsequent request for review.  As a result, the ALJ's decision became the final decision of the Commissioner of Social Security (Commissioner).  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the Court for review under 42 U.S.C. § 405(g).   For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

## II.      Facts

Plaintiff was forty-four years old at the time of the ALJ's decision on September 3, 2008. (Tr. 40, 89).  She has a tenth grade education, and has previously worked as a spray painter in a

factory and as a stocker/cashier. (Tr. 107, 112, 126). Plaintiff alleges she became disabled as of October 11, 2006, due to a combination of scoliosis, muscle spasms, bursitis, fibromyalgia, and back pain. (Tr. 89, 106). At the hearing before the ALJ, Plaintiff's counsel conceded that this is a pain case and that Plaintiff is unable to work because of the level of pain she experiences. (Tr. 55).

Plaintiff was hospitalized in 2006 for depression. (Tr. 210-11). At that time she made no complaints of severe or uncontrolled pain. (Tr. 210). Dr. G. Michael Shehi treated Plaintiff and opined that her prognosis was good with only outpatient treatment and compliance with prescribed medications. (Tr. 210-11). He observed that Plaintiff had a GAF score of 64. (Tr. 211).

Dr. Barry Wood performed a consultative psychological evaluation on Plaintiff in February 2007, during which Plaintiff reported a history of sporadic treatment for psychological issues and significant improvement with medication. Plaintiff also reported that she occasionally ceased treatment on her own. (Tr. 228-31). At that particular examination, Plaintiff reported that she had not taken her medication for two weeks. Nonetheless, despite being unmedicated, Dr. Wood considered Plaintiff's depression to be only mild. (Tr. 229-31). He assigned her a GAF score of 67, which indicates only mild symptoms. (Tr. 231). Dr. Wood also observed that Plaintiff ambulated slowly with a limp, but did not indicate that she required or was using a cane. (Tr. 230). Dr. Wood opined that: Plaintiff could understand, recall, and execute reasonable instructions; that her ability to work would be slightly impacted by her mood symptoms, but that the impact would be minimized if she took her medication consistently; and that her mood symptoms affect, but do not preclude, effective social interaction with coworkers, supervisors and customers. (Tr. 231). Dr. Wood's report does not indicate that he observed that pain affected Plaintiff's concentration. (Tr. 228-31).

Plaintiff's sporadic treatment for psychological issues from June 2007 through April 2008 included appointments every three months at Riverbend Center for Mental Health to monitor her medication and progress. (Tr. 273-311). At the visits in 2007 and 2008, Plaintiff reported improvement with medications, good sleeping and eating, and that her symptoms were managed through treatment compliance. (Tr. 273-80). At her appointment in June 2007, the examination showed that Plaintiff's concentration and attention were within normal limits. (Tr. 295-309). At her September 2007 appointment, Plaintiff's speech and psychomotor activity were normal and her recall and spelling ability were consistent with good concentration. (Tr. 292).

In January 2008, Dr. Warren Hardy Scott from Riverbend observed that Plaintiff was groomed appropriately, and her thoughts were organized, even though her judgment was only poor or fair. (Tr. 280). At this visit, Plaintiff reported that she ceased taking some of her medications. (Tr. 280). During the last visit reflected in the record before the ALJ, from April 2008, Plaintiff declined individual therapy, and her next appointment was scheduled for six months later (as opposed to the previous three-month increments). (Tr. 273). Dr. Scott assigned Plaintiff a GAF score of 60. (Tr. 274).

In October 2006[1], Plaintiff went to the emergency room for an earache. At that time, she reported that she was taking no medications. The physical examination showed no extremity or back complaints, and only moderately mild to moderate generalized aching. The doctor diagnosed Plaintiff with an upper respiratory infection. (Tr. 213-16).

---

[1] Plaintiff's counsel amended the onset date of her disability claim to coincide with the date of her application for benefits, October 11, 2006. (Tr. 50).

Dr. Marlin D. Gill performed a consultative evaluation on Plaintiff in February 2007. (Tr. 225-26). At that time, Plaintiff stated that she could not work because of low back pain, but she reported no use of any pain or muscle relaxant medication. Furthermore, she reported that she lived alone in an apartment and was able to do her own laundry, occasional grocery shopping, and care for her own personal needs. (Tr. 225-26). Dr. Gill observed that Plaintiff had a normal gait and walked unassisted, without any devices. (Tr. 226). Dr. Gill observed that Plaintiff could bend forward 70 degrees and stand back up and that she could flex her hips to 90 degrees. (Tr. 226). His assessment was that Plaintiff had chronic back pain. (Tr. 226). After her appointment with Dr. Gill, there is an almost nine-month gap in treatment for Plaintiff's pain issues until Plaintiff met with Dr. James H. Halsey, a board-certified neurologist, in December 2007. (Tr. 266-67).

Dr. Halsey performed a physical evaluation in December 2007 which showed that Plaintiff's spine was normal and her complications were considered mild. Subsequent x-ray findings confirmed only mild or minimal abnormalities. (Tr. 266-71). Although Dr. Halsey observed that Plaintiff walked with a cane, he did not state an opinion regarding whether she actually needed it. (Tr. 266-67). Approximately two weeks after this visit, Plaintiff called Dr. Halsey's office to report that over-the-counter analgesics were effective at relieving her pain. (Tr. 266). One week later, however, she called complaining of severe pain and was prescribed Lortab. (Tr. 266).

Plaintiff saw Drs. Kevin J. Lasseigne and Sophia Lal, physical medicine and rehabilitation specialists, in April 2008. (Tr. 312-13 ). Their notes indicate that Plaintiff was in no apparent distress. Their notes also indicate that certain test revealed no pain, and others revealed pain out of proportion to the test. (Tr. 313). Plaintiff reported that the only thing that provided her relief was Voltaren. (Tr. 312). The physical examination showed that Plaintiff had no muscle spasms in her

4

spine, no scoliosis, normal strength in all extremities, normal sensation, and normal reflexes.  (Tr. 312-13).  The doctors advised her to begin exercise and stop smoking, and they discussed proper nutrition with her.  (Tr. 313).

Dr. Gill's treatment notes from February 2007 reflect a diagnosis of obesity.  (Tr. 226).  The ALJ considered that diagnosis and determined it a severe impairment.  (Tr. 32, Finding No. 2).  However, Plaintiff testified at the hearing that she had been at the same weight for a couple of years and that it did not affect her ability to move or go about her day.  (Tr. 56).

Plaintiff testified at the hearing that the reason she could not work was her pain.  (Tr. 56).  She described chronic pain in her shoulder, back, and down her right leg at the level of 7/10 on a zero to ten scale.  (Tr. 62 ).  She testified that she was never pain free and required the use of a walking stick because of foot pain.  (Tr. 62).  She further complained of depression and an inability to drive more than five miles because of her back pain and poor concentration.  (Tr. 59).  Plaintiff testified that her mother did all of her cooking for her, despite the fact that her mother is receiving disability benefits.  (Tr. 50, 64).

## III.    The ALJ's Decision

After review and evaluation of the medical evidence and hearing testimony (Tr. 32-40), and employing the proper five-step process (Tr. 32-40), the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform simple, routine, repetitive medium work activity with no contact with the general public, and only occasional interaction with supervisors and coworkers.  (Tr. 33, Finding No. 4).  The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms, but that her statements concerning the intensity, persistence and limiting effects of these symptoms were not credible and were inconsistent with her

RFC.  (Tr. 34).  *See* 20 C.F.R. §§ 416.929, 416.945, 416.946(c).  The ALJ found that Plaintiff was able to perform her past relevant work as a spray painter.  (Tr. 40).  Therefore, the ALJ concluded that Plaintiff was not disabled through the date of his decision. (Tr. 40, Finding No. 5).

IV.     **Discussion**

    A.     **Standard of Review**

The court's review of the Commissioner's decision is a limited one.  The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal citation omitted)).  If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir.

6

1990).  While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**B.      The Five Step Analysis**

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  "A 'physical or mental impairment' is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Ingram v. Astrue*, 2011 WL 738626 *1 n.2 (M.D. Ala. 2011).

To make the determination of whether a claimant is entitled to disability benefits, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

1.      Is the person working in a substantial gainful activity?

2.      Does the person have a medically determinable impairment that is "severe" or a combination of impairments that is "severe"?

3.      Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of Impairments]

4.      Is the person unable to perform his or her former occupation?  That is, does the claimant's RFC meet the physical and mental demands of past work.  The claimant's RFC consists of what the claimant can do despite her impairment.

5.     Does the claimant's age, education, and past work experience prevent the performance of any other work, *i.e.*, is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, with respect to steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment."  *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).  Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment."  *Id.*

The court does not require briefs of the parties, and Plaintiff elected not to file a brief.  By failing to file a brief, however, Plaintiff has failed not only to point out where she believes the ALJ erred, but also to present any particular argument for remand and/or reversal.  Nonetheless, the court must still evaluate the ALJ's decision in light of the applicable law.  For the reasons outlined below, the court finds that the ALJ applied the proper standards, and that his conclusion that Plaintiff has not been under a disability is supported by substantial evidence.

**C.     The ALJ Applied the Proper Standards**

**1.     The ALJ Applied the Proper Five Step Process**

The ALJ applied the proper five-step sequential evaluation process.  (Tr. 31-40).  He answered each of the five questions.  First, the ALJ found that Plaintiff had not been gainfully

8

employed since her alleged onset date.  (Tr. 32).  Second, he found that her combination of impairments was severe in that the impairments caused more than minimal limitations in Plaintiff's ability to engage in work-related activities.  (Tr. 32).  Third, the ALJ found that Plaintiff's impairments do not meet or exceed one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 32).  Fourth, he found that, in comparing Plaintiff's RFC with the physical and mental demands of her past work, she is able to perform past work as a spray painter.  (Tr. 32-40). Therefore, and finally, the ALJ concluded that Plaintiff had not been under a disability as defined by the Act.  (Tr. 40).

### 2.    The ALJ Applied the Proper Pain Standard

The Eleventh Circuit has articulated its "pain standard," governing the evaluation of a claimant's subjective testimony about pain, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ evaluates the "claimant's subjective testimony of pain" only after the claimant satisfies the first and one of the alternate portions of the second prong of the pain standard. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Eleventh Circuit has also held that, "in certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence." *Id.* at 1561. Importantly, it is only evidence of the underlying condition which could reasonably be expected to cause pain, not evidence of actual pain or its severity, which must be presented by the claimant to satisfy the "pain standard."

*Elam v. Railroad Retirement Bd.*, 921 F.2d 1210, 1215 (11th Cir.1991); *see also Foster v. Heckler*, 780 F.2d 1125, 1129 (4th Cir.1986); *Hill v. Barnhart*, 440 F.Supp.2d 1269, 1272-73 (N.D. Ala. 2006) (*quoting Elam*, 927 F.2d at 1215). Where the ALJ proceeds to consider the claimant's subjective testimony about pain, the ALJ's decision to reject or discredit such testimony is reviewed for substantial evidence. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992). Finally, if the ALJ determines to discredit subjective pain testimony and such testimony is crucial to the claimant's assertion of disability, the ALJ "must articulate specific reasons for questioning the claimant's credibility." *Id*.

In this case, the ALJ articulated and applied the proper paid standard.  (Tr. 33).  The ALJ concluded that Plaintiff had underlying medical conditions.  However, he concluded that her conditions did not meet either of the options under the second prong of the pain standard.  (Tr. 32-40).  Moreover, where the ALJ discredited Plaintiff's subjective testimony about her level of pain, he set forth in great detail the record evidence supporting that decision.  (Tr. 33-40).  Specifically, the ALJ noted, among other things, that the medical records showed an absence of complaints by Plaintiff of pain during treatment visits for other medical or psychological issues which took place during the period of time she claims her pain was disabling.  Furthermore, he noted that the medical records showed not only that Plaintiff's alleged pain was disproportional to her underlying conditions, but also that her treatment of her pain was inconsistent with her claimed level of pain.  Therefore, the ALJ applied the proper pain standard.

D.      **There is Substantial Evidence to Support the ALJ's Decision**

Although the medical evidence described above shows that Plaintiff had severe impairments, there was substantial evidence from which the ALJ could determine that the intensity and severity of the pain experienced by Plaintiff did not rise to the disabling intensity and severity she alleges.

The radiological findings of Drs. Lasseigne and Lal showed only mild or minimal abnormalities, and they concluded that Plaintiff's pain was out of proportion to the objective medical evidence.  (Tr. 35, 313).

The ALJ also found that Plaintiff's subjective complaints about the severity and intensity of her pain were not entirely credible because of her lack of consistent treatment and her limited compliance with treatment instructions.  (Tr. 33-39).  It does not appear that Plaintiff sought treatment for her pain until two months after her alleged onset date.  Further, even on those occasions when she sought treatment for other conditions, Plaintiff's medical records do not show the consistent complaints of pain that would have been expected from her claimed level of pain.  (Tr. 35).  The ALJ also noted that Plaintiff generally did not consistently use prescription or even over-the-counter medications to treat her pain.  Indeed, the record showed significant periods of time during which Plaintiff was not taking any medications for pain.  (Tr. 36).  The medical records also showed some inconsistency in Plaintiff's statements about the effectiveness of her pain medications.  (Tr. 36).

Plaintiff testified at the hearing that she was never pain-free, that she had not been on a pain medication regime that she could tolerate, and that her current pain medications, Voltaren and Lortab, did not help.  (Tr. 61).  These statements, however, were contradicted by, among other records:  (1) medical records from Dr. Gill from February 2007 reporting Plaintiff's gait to be normal

11

at a time when she reported taking no pain medications (Tr. 225); (2) medical records from December 20, 2007 which reflect that Plaintiff reported that over-the-counter analgesics and ibuprofen 800 relieved her pain (Tr 266); and (3) Plaintiff's report to her physicians in April 2008 that Voltaren and Lortab were the only things which provided her pain relief (Tr. 312).

Plaintiff's daily activities were also somewhat inconsistent with activities of someone in intense pain.  (Tr. 34-39).  Plaintiff reported on disability forms that she lived alone and independently in an apartment and enjoyed television and would watch five or six hours per day of talk and reality shows.  (Tr. 121-24, 137, 140).  She also was able to grocery shop, prepare a grocery list, wash dishes, and do laundry.  (Tr. 121-24, 136).  She reported that friends and family visited weekly, she had a boyfriend and a checking account, and that she liked to sit out on her porch.  (Tr. 136).  In sum, there is substantial evidence supporting the ALJ's determination that Plaintiff's limited daily activities were not the direct result of a disability.  (Tr. 37-38).

Furthermore, to the extent that Plaintiff attempts to attribute the inconsistent treatment of her pain to financial constraints, the court, like the ALJ, notes there is substantial evidence that the lack of funds for pain medications was an unfortunate lifestyle choice by Plaintiff.  The record shows that, despite being admonished by her physicians to stop smoking, Plaintiff continued to smoke up to a pack of cigarettes per day.  The cost of those cigarettes could have been applied to the purchase of pain medications.  (Tr. 38, 66).

In determining Plaintiff's RFC, the ALJ credited certain physicians and discredited others. However, he explained why he made those credibility determinations and his findings were based upon substantial evidence in the record.  The ALJ considered the physicians' relative opinions to determine whether they were consistent with the record as a whole, and considered other relevant

12

factors such as their medical specialty.  *See* 20 C.F.R. § 416.927(d); Social Security Ruling (SSR) 96-2p, 1996 WL 374188 (S.S.A. 1996).  The opinion of a physician, even a treating physician, may be discounted when the opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if the opinion is inconsistent with the record as a whole.  *See* 20 C.F.R. § 416.927(d); SSR 96-2p; *Crawford v. Commissioner of Soc. Sec*., 363 F.3d 1155, 1159-60 (11th Cir. 2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  Based upon the record as a whole, there is substantial evidence to support the ALJ's assessment of Plaintiff's RFC.

After finding Plaintiff could perform simple, repetitive medium work, the ALJ found Plaintiff could perform her past relevant work as a spray painter.  (Tr. 40).  It is Plaintiff's burden to show that she cannot perform her past relevant work.  *See* 20 C.F.R. § 416.920(a)(4)(iv); *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). At the hearing before the ALJ, a vocational expert (VE) testified that Plaintiff's past relevant work included the positions of cashier, spray painter, and sales attendant and that all of those jobs were unskilled in nature.  (Tr. 67-74).  An ALJ may rely on the testimony of a VE to find that someone with a particular RFC could perform particular jobs.  *See* 20 C.F.R. §§ 416.969, 416.969a; *Phillips*, 357 F.3d at 1242-44. The VE testified that the job of spray painter requires a medium level of exertion.  (Tr. 67). The testimony of the VE supports the ALJ's finding that the job of a spray painter did not require the performance of work-related activities precluded by Plaintiff's RFC.  (Tr. 70-71). Therefore, the ALJ's conclusion that Plaintiff could perform her past relevant work is supported by substantial evidence in the record and the ALJ properly found she was not disabled.

## VI.    Conclusion

The court has carefully and independently reviewed the record and concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching that determination.  The Commissioner's final decision is due to be affirmed, and a separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this _____30th_____ day of March, 2011.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE

14